**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

───────────────────────────

DERRICK TEAQUE,

                              Plaintiff,                    9:18-CV-01412
            v.                                              (GTS/CFH)

K.L. MULLEN, et al.,

                              Defendants.

───────────────────────────

**APPEARANCES:**                              **OF COUNSEL:**

Derrick Teaque
16-A-2967
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034
Plaintiff pro se

Hon. Letitia James                            NICHOLAS LUKE ZAPP, ESQ.
Attorney General for the                      Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224
Attorneys for Defendants

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION & ORDER[1]

        Plaintiff pro se Derrick Teaque ("plaintiff"), an inmate who was at all relevant times

in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), commenced this action on December 4, 2018, pursuant to 42

───────────────

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

U.S.C. § 1983.  Dkt. No. 1 ("Compl."); Dkt. No. 27 ("Am. Compl.").  Plaintiff contends that

defendants deprived him of his constitutional rights under the Eighth Amendment.  See

Am. Compl.  Defendants move, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.

P.") 56, to dismiss the amended complaint.  Dkt. No. 32.  Plaintiff opposes defendants'

motion.  Dkt. No. 34.  For the following reasons, it is recommended that defendants'

motion be granted, and plaintiff's amended complaint be dismissed in its entirety without

prejudice.


## I.  Background

### A.  Facts

Plaintiff alleges that at Mid-State Correctional Facility ("Mid-State") on October 11,

2018, at approximately 9:22 P.M., he was pepper-sprayed, "physically mutilated," and

harassed by multiple corrections officers.  Am. Compl. at 5.[2]  While walking through a

housing area, plaintiff alleges that he stopped to give another inmate a writing pen.  See

id.  As a result, Defendant Mullen indicated that she would be "writing a misbehavior

report for cube visiting[.]"  Id.  Defendant Mullen also "grab[bed] [plaintiff] by [his] shirt with

full force[,]" and when plaintiff tried to pull himself away from Defendant Mullen, she

pepper-sprayed him.  See id. at 6.  Plaintiff contends that after he was pepper-sprayed,

several other corrections officers approached the area and "physically mutilated harassed

and beat [him] to the point that [he] had bruises on [his] face, neck, back, and scrapes

and cuts on [his] feet, knees and behind [his] ears."  Id.  As a result of this incident, plaintiff

---

[2] Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not the page numbers used by the parties in the individual documents.

was sent to the hospital and required five stitches in his right eye.  See id. at 6, 20.  Plaintiff contends that Defendants Sexton, O'Donnell, and Ingraham saw and heard this incident, and failed to intervene.  See id. at 23, 25.

On October 22, 2018, plaintiff filed grievance #MS-23743-18 regarding the October 11, 2018, incident involving Defendants Mullen, Sexton, Ingraham, and O'Donnell.  See Dkt. No. 32-3 ("Tapia Decl.") ¶ 10.  In his Amended Complaint, filed on May 22, 2019, plaintiff noted that: (1) his grievance was "'pending' being investigated by Superintendent of Midstate Correctional Facility"; (2) his grievance was "[f]orwarded to Superintendent for investigation"; (3) he grieved/appealed his claim; (4) "seventy-three days have passed since grievance was filed, still no response from grievance department"; and (5) he grieved/appealed his claim, his grievance was denied, he appealed the denial, and the appeal is now "pending . . ."  Am. Compl. at 5-7, 13, 14, 20.

As plaintiff's grievance qualified as a harassment grievance, it was immediately forwarded to the superintendent for investigation; however, the superintendent did not render a determination regarding grievance MS-23743-18 until February 20, 2019, when plaintiff's grievance was denied.  See Tapia Decl. ¶ 11.  Plaintiff signed and appealed the superintendent's decision to the Central Office Review Committee ("CORC") on March 5, 2019.  See id. ¶¶ 12, 13.  CORC received plaintiff's appeal regarding grievance MS-2743-18 on March 18, 2019.  See Dkt. No. 32-4 ("Seguin Decl.") ¶ 10.  Plaintiff received a "response" from CORC in a letter dated April 25, 2019.  See Dkt. No. 34 at 1.  As of June 21, 2019, it does not appear that CORC had decided plaintiff's appeal.  See generally Tapia Decl.

3

### B. Procedural History

On December 4, 2018, the Court docketed the Complaint[3] in the within action, accompanied by an application to proceed in forma pauperis ("IFP"). See Compl.; Dkt. No. 2. Plaintiff subsequently filed numerous documents, including two additional IFP applications and a "supplemental complaint."[4] See Dkt. Nos. 5, 8, 10, 11. On February 1, 2019, Chief District Judge Glenn T. Suddaby issued a Decision and Order granting plaintiff's third IFP application and accepting plaintiff's failure-to-intervene claims against defendants Mullen, Sexton, and Ingram, and directed defendants to respond. See Dkt. No. 13 at 2, 8. On May 22, 2019, Judge Suddaby issued a Decision and Order granting in part and denying in part plaintiff's motion to amend his complaint; (1) adding as a defendant S. O'Donnell, Corrections Officer; (2) directing defendants to answer plaintiff's amended complaint; and (3) dismissing several defendants without prejudice. See Dkt. No. 26 at 13. Plaintiff filed his Amended Complaint on May 22, 2019, dkt. no. 27, and defendants filed their Motion for Summary Judgment in lieu of an answer on June 21, 2019, seeking to dismiss plaintiff's claim in its entirety for failure to exhaust administrative remedies. See Dkt. No. 32. Plaintiff opposes defendants' motion. See Dkt. No. 34.

On November 7, 2019, plaintiff filed a letter motion seeking to "withdraw the above-entitled action against Defendants pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) without prejudice, and to stop the order of fees from his prison account, any future payments mailed to the Court for Civil Case 9:18-CV-01412-GTS-CFH be returned to Collins Correctional Facility to inmate Derrick Teaque 16A2967." Dkt. No. 37. Plaintiff advised

---

[3] The Complaint is undated.
[4] The Supplemental Complaint is dated December 18, 2018. Dkt. No. 11. After plaintiff filed the "Supplemental Complaint," Court combined the Complaint and Supplemental Complaint to be considered the original Complaint in this action. See Dkt. No. 1.

the Court that he is "not capable of continuing to prosecute this case alone.  I don't have funds for copies, I don't have access to computers & typewriters, I don't have the funds for a lawyer.  Please dismiss 9:18-CV-1412 as soon as possible." Id. at 1-2.  Defendants filed a response to this letter motion indicating that they would stipulate to dismissal of the action.  Dkt. No. 38.  On November 15, 2019, plaintiff filed a "reply" to his letter motion. Dkt. No. 39. Therein, plaintiff "request[ed] an Amended Commitment stating 'Do NOT Collect & STOP payments of the filing fee.'"  Dkt. No. 39.

On November 27, 2019, the Court issued a Decision & Order denying plaintiff's request for a refund of that portion of the filing fee already paid and for a cessation of the withdrawals of the remainder of the filing fee.  Dkt. No. 40.  The Court also stayed the case for thirty days to allow plaintiff to inform the Court whether he wished to proceed with the action.  Id.  On December 4, 2019, plaintiff advised the Court that he wished to proceed with the action.  Dkt. No. 41.  On December 5, 2019, the Court issued a text order indicating that the case would remain open and that the pending motion for summary judgment would be addressed in due course.  Dkt. No. 42.  On December 11, 2019, without permission of the Court, plaintiff filed a further response in opposition to the motion for summary judgment.  Dkt. No. 43.  As plaintiff filed this further submission without leave of the Court and well after the time for submissions relating to the motion for summary judgment were complete,[5] the undersigned has not considered the filing and recommends that it be deemed STRICKEN from the record.

## II.  Discussion

---

[5] Plaintiff's deadline to file a response to defendants' motion for summary judgment was July 29, 2019, and plaintiff was advised of this deadline by the Court.  Dkt. No. 33.  Plaintiff timely filed a response in opposition on July 10, 2019, dkt. no. 34, and the undersigned reviewed that filing in rendering the instant Report-Recommendation & Order.

### A.  Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party."  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  Id.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

In determining a summary judgment motion, "[f]actual disputes that are irrelevant or unnecessary will not be counted."  Liberty Lobby, 477 U.S. at 247.  The nonmovant

6

"must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. "Mere conclusory statements or reliance on the pleadings, . . . will not suffice, . . ." Celtoex, 477 U.S. at 324, 106 S. Ct. 2548. The court must look to the substantive law to identify which facts are material. Liberty Lobby, 477 U.S. at 248.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). The Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Exhaustion

Defendants contend that their motion for summary judgment must be granted because plaintiff failed to fully and properly exhaust his administrative remedies before filing suit. See Dkt. No. 32-1 ("Def. Mem. of Law") at 7-8. In response, plaintiff claims that "CORC has 30 days from receipt of appeal in which to render a decision. They failed to do so. This rendered the grievance opaque to me." Dkt. No. 34 at 1.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising

out of his or her incarceration.  See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81 (2006).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  Id. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Administrative remedies consist of a three-step Inmate Grievance Program ("IGP").  See N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.1, 701.5.  First, the inmate must file a complaint with an inmate grievance program clerk within twenty-one days of the alleged incident.  Id. § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue.  Id. § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination.  Id. §§ 701.5(d)(i)-(ii).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons

stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). As previously stated by Magistrate Judge Peebles:

> It is worth noting that . . . where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" Id. at § 701.8(a). [S]ection 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. Id. at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." Id. at § 701.8(b).

Eleby v. Smith, et al., No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2016), report-recommendation adopted by 2017 WL 979040 (N.D.N.Y. Marc 13, 2017).[6]

Each step of the IGP process requires that a decision be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Specifically, with a harassment grievance, the superintendent of the facility "will render a decision on the grievance" within twenty-five calendar days of receipt. Id. at § 701.8(f). Should the superintendent fail to respond within the twenty-five day time frame, "the [inmate] may appeal his/her grievance to CORC" which can be done by "filing a notice of decision to appeal [] with the inmate grievance clerk." Id. at § 701.8(g). When the inmate receives the superintendent's response and "wishes to appeal the superintendent's response to CORC, he/she must file a notice of decision to appeal [] with the inmate grievance clerk within seven calendar

---

[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

days of receipt of that response." Id. at § 701.8(h).  If the IGRC and/or superintendent fail to timely respond, an inmate may appeal "to the next step." Id. at § 701.6(g)(1)(b)(ii)(2); see also Eleby, 2017 WL 986123, at *4; Smith v. Kelly, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal . . . can—and must—be appealed to the next level, including CORC, to complete the grievance process.") (citing 7 N.Y.C.R.R. § 701.6(g)).

Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  In Ross v. Blake, the Supreme Court held in that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1862 (2016).  Although Ross eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. Id. at 1859.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart

10

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Generally, if it is found that the inmate has not exhausted all available administrative remedies, his or her case should be dismissed without prejudice. See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 560 F.3d 118, 124 (2d Cir. 2009) (citation omitted). Since "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner . . . can cure the defect by exhausting [the available remedies] and reinstating his suit." Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999)).

### 1. Did Plaintiff Exhaust Administrative Remedies?

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F. Supp.2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) report-recommendation adopted by 2011 WL 4478921 (N.D.N.Y. Sept. 26, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

The record in the case before the Court demonstrates that plaintiff completed only the first step of the grievance process before commencing this lawsuit. Plaintiff filed his grievance regarding the events giving rise to this action on October 22, 2018. See Dkt. No. 34; Tapia Decl. at ¶ 10. As plaintiff's grievance qualified as a harassment grievance, it was forwarded to the superintendent for further investigation. See Taplia Decl. at ¶ 11. Plaintiff commenced this action on December 4, 2018, forty-three days after filing his grievance with the IGRC. See Compl.; Dkt. No. 32-2 at ¶ 4; Def. Mem. of Law at 7. The superintendent denied plaintiff's grievance on February 20, 2019 (approximately seventy-eight days after plaintiff initiated this action). See id. at ¶ 11. Plaintiff signed his appeal of the superintendent's determination on March 5, 2019, and his appeal was mailed from the grievance clerk at Mid-State to CORC on March 11, 2019. Id. at ¶ 13. CORC received the appeal of plaintiff's grievance on March 18, 2019, and responded to plaintiff in a letter dated April 25, 2019. See Dkt. No. 34; Seguin Decl. at ¶ 10. To the Court's knowledge, as of June 21, 2019, CORC had not made a final determination regarding plaintiff's grievance.

"If a prisoner has failed to properly follow each of the applicable steps before commencing litigation, he has failed to exhaust his administrative remedies." Scott v. Uhler, No. 9:16-CV-403 (TJM/CFH), 2019 WL 5197139, at *5 (N.D.N.Y. July 31, 2019), report-recommendation adopted by 2019 WL 4667495 (N.D.N.Y. Sept. 25, 2019); see also Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Jan. 16, 2014) (citing Woodford, 548 U.S. at 81, 93). Because plaintiff commenced this action before receiving a response from the superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing

this action.  See Jones v. Bock, 549 U.S. 199, 215-16 (2007) (noting that, because failure to exhaust is an affirmative defense, the plaintiff is not obligated to plead facts demonstrating that he complied with the exhaustion requirement; however, where the plaintiff does plead facts showing his failure to exhaust his administrative remedies before commencing his federal lawsuit, the complaint may be dismissed for failure to state a claim); see also Shepherd v. Lempke, No. 9:10-CV-1524, 2017 WL 1187859 (N.D.N.Y. Mar. 30, 2017) ("[I]t is well-established that "post-exhaustion amendment of the complaint does not cure an exhaustion defect existing at the time the action was commenced[.]") quoting Guillory v. Haywood, 2015 WL 268933, at *11 (N.D.N.Y. Jan. 25, 2015)) (collecting cases).

### 2.  Availability of Administrative Remedies

Plaintiff does not appear to argue that he exhausted his administrative remedies before commencing this lawsuit; instead, he contends that administrative remedies were unavailable to him because the superintendent and CORC's failures to timely render a decision "rendered the grievance [o]paque."  Dkt. No. 34.  Defendants "acknowledge that the Superintendent's decision was issued beyond the twenty-five calendar days set forth in 7 N.Y.C.R.R. § 701.8 (f)[,]" but point out that plaintiff "had the option of filing his appeal to CORC" since he had not received a response from the superintendent within the twenty-five day time frame.  Def. Mem. of Law at 9.

Courts within the Second Circuit, including within this District, appear split over whether a delay in a response during the IGP process constitutes "unavailability" excusing a plaintiff's failure to exhaust his administrative remedies before commencing suit. Compare Fox v. Lee, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 (N.D.N.Y.

Dec. 18, 2018) (concluding that CORC's approximate four-month delay in responding to the plaintiff's appeal did not render the grievance process unavailable) and Berkley v. Ware, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) report-recommendation adopted by 2018 WL 3730172 (N.D.N.Y. Aug. 6, 2018) (concluding "that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement.") with Rodriguez v. Reppert, No. 14-CV-671 (RJA/MJR), 2016 WL 11483439, at *1 (W.D.N.Y. Sept. 28, 2016), report-recommendation adopted by 2016 WL 6993383 (W.D.N.Y. Nov. 30, 2016) (concluding that because CORC failed to respond within the 30-day time frame set by regulation, administrative remedies were unavailable to the plaintiff and dismissal for failure to exhaust was not appropriate) and High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by High v. PA Switz, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (concluding that administrative remedies were unavailable to the plaintiff after CORC's nearly year-long delay because "there is no direction on any action a[n] [inmate] may take if he does not receive a response from CORC"; thus, dismissal for failure to exhaust was not appropriate).

To the extent plaintiff argues administrative remedies were unavailable to him at the time he commenced this action, the undersigned disagrees.  As stated above, plaintiff's grievance was forwarded to the superintendent on an expedited basis[7] due to the "harassment" nature of the grievance.  See Tapia Decl. at ¶ 11.  Plaintiff initiated the within action on December 4, 2018, approximately forty-three days after filing his October

---

[7] The IGP Supervisor at Mid-State, Christopher Tapia, indicated in his Declaration that plaintiff's grievance was forwarded to the superintendent for immediate investigation because it was a harassment grievance; however, his Declaration does not specify the date on which date plaintiff's grievance was forwarded to the superintendent.  See Tapia Decl. at ¶ 11

22, 2018 grievance, but before receiving the superintendent's response.  <u>See</u> Compl.; Am. Compl. at 1, 6, 14.  As set out in Section 701.8, the superintendent has twenty-five calendar days to render a decision on the grievance.  <u>See</u> 7 N.Y.C.R.R. § 701.8(f).  If, however, the superintendent does not render a decision within twenty-five calendar days, the inmate "may appeal his/her grievance to CORC."  <u>Id.</u> at § 701.8(g). Many courts in this District have held that where the inmate does not receive a timely response, an inmate must appeal the next step or make efforts to track their grievance.  Indeed, several courts in this district have determined that fact that the superintendent did not render a decision within the statutory twenty-five calendar days generally does not excuse a plaintiff's failure to exhaust.  Courts within this Circuit have found this principle applicable regardless of whether the delay was from the IGRP, superintendent, or CORC.  <u>See, e.g.,</u> <u>Heyliger v. Gebler</u>, 624 F. App'x. 780, 782 (2d Cir. 2015) (summary order) ("[I]f at any step of the grievance process[ ] an inmate did not receive a response within the specified time frame, he was nonetheless permitted to appeal to the next step . . . [W]hen [the plaintiff] did not receive a [] response from the IGRC, appeal to the superintendent was still an available administrative remedy."); <u>Cohen v. Welch</u>, 9:16-CV-00593 (FJS/TWD), 2017 WL 3311244, at *5 (N.D.N.Y. July 11, 2017), <u>report-recommendation</u> <u>adopted</u> <u>by</u>, 2017 WL 3309713, at *6 (N.D.N.Y. Aug. 2, 2017) ("[E]ven if Plaintiff did not receive a timely response from the IGRP, he was required to complete steps two and three of the IGP.").   In <u>Berkley</u>, for example, this Court determined that, where the plaintiff commenced his federal action before receiving a response from CORC, "CORC's approximately five-month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement."  <u>Berkley</u>, 2018 WL 3736791, at *6.  The <u>Berkley</u> Court noted

that the plaintiff had not mentioned the unavailability of the grievance process in his appeal to CORC and did not write to either the IGRC or CORC to check on his appeal before filing the lawsuit. Id.

Whether the delay rendered administrative remedies to the inmate unavailable is a fact- and case-specific determination. However, in assessing availability, this District and others within in this Circuit have considered the length of the delay and the inmate's attempts to reach out to CORC (or the relevant level of the IGP process). See High, 2018 WL 3736794, at *5 (noting that "the Second Circuit did not and has not decided the precise issue raised on this Motion—a claim of failure to exhaust where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present Motion to Dismiss had been filed," and concluding that, although the regulations explained that an inmate should appeal to the next step in the event he does not receive a response, because regulations did not specify what the inmate should do if he does not receive a timely response from CORC, administrative remedies were unavailable to the inmate); see also Gizewski v. N.Y. State Dep't of Corrections and Community Supervision, 692 F. App'x 668, 670 (2d Cir. 2017) (summary order) (noting that, where a clerical error caused one-year delay in superintendent's response to the inmate's grievance, administrative remedies were available as the inmate did not exhaust prior to commencing a lawsuit); Berkley, 2018 WL 3736791, at *6; Hayes v. Dahlke, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11,

2018) (finding that CORC's delay did not excuse the exhaustion requirement where "there is no indication in the record that plaintiff wrote to CORC regarding the status of his appeal and CORC further neglected to respond); cf. Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) (finding that a two-year delay in CORC response rendered administrative remedies unavailable to the inmate plaintiff).

Here, the record indicates that plaintiff waited for the superintendent's decision before appealing to CORC.  There is no evidence in plaintiff's Amended Complaint or his Reply to defendants' Motion for Summary Judgment indicating that he wrote the superintendent to inquire as to the status of his grievance or that he was attempting to appeal directly to CORC.  See Am. Compl.; Dkt. No. 34; Fox, 2018 WL 8576600, at *7 (concluding that administrative remedies were available to the plaintiff, despite a four-month CORC delay where there was no evidence that the plaintiff "wrote to the Eastern IGRC or CORC inquiring as to the status of his appeals . . . ." and because NYCRR § 701.5(d)(3)(1) provides, "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal [to CORC], the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC" as does DOCCS Directive 4040).  The superintendent rendered a decision regarding plaintiff's grievance on February 20, 2019, approximately ninety-six days beyond the prescribed twenty-five day time frame.  See Tapia Decl. at 11.  Between November 16, 2018, and the time this Motion for Summary Judgment was fully briefed, plaintiff made no attempt to appeal his grievance to CORC nor did he attempt to inquire as to status of the superintendent's determination.  As noted above, in his Amended Complaint, plaintiff makes clear that he did not fully exhaust his administrative remedies as he addresses the

grievance as "pending[,]" and "being investigated by Superintendent of Mid-State Correctional Facility[.]"  Am. Compl. at 5-6.  Therefore, the record before the Court demonstrates that plaintiff was waiting for the superintendent to make a determination on his grievance before appealing to CORC, and filed this suit before receiving a response.

Further, plaintiff commenced this action before receiving a response from either the superintendent or CORC.  Although the superintendent's delay in rendering a decision – forty-three days as of the day plaintiff filed suit – was not brief, plaintiff's failure to check with the superintendent as to the status of his grievance or appeal and his subsequent failure to appeal to CORC before commencing this lawsuit, leads the undersigned to conclude that administrative remedies were available to him.  See Scott, 2019 WL 5197139, at *6 (finding that the plaintiff failed to show administrative remedies were unavailable "[c]onsidering the totality of the circumstances, [including the plaintiff's] failure to check with CORC as to the status of his appeal prior to commencing this action, and the relatively short delay in receiving a response from CORC."); Fox, 2018 WL 8576600, at *7 (holding that four-month delay between appeal and CORC response did not render administrative remedies unavailable where the plaintiff did not attempt to contact the IGP or CORC to check the status of his appeal); Arce v. Keane, No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); cf. High, 2016 WL 3039687, at *10 (explaining that the relatively long CORC delay excused the plaintiff from the exhaustion requirement).

Significantly, the undersigned must consider the availability of remedies at the time the inmate commenced the action.  See Lewis v. Hanson, 9:16-CV-804 (MAD/TWD),

2017 WL 4326084, at *3 (N.D.N.Y. Sept. 28, 2017) (emphasis added) ("Even if the Court were to find that administrative remedies became unavailable . . . there are no allegations that administrative remedies were unavailable at the time that [the p]laintiff commenced this action."); see also Pacheco v. Zurlo, No. 09-CV-1330, 2011 WL 1103102, at *3 (N.D.N.Y. Feb. 8, 2011).  At the time plaintiff initiated this action, his grievance was "pending," and he had "[f]orwarded [the grievance] to the superintendent for investigation."  Am. Compl. at 5-7.  As discussed above, plaintiff could have inquired into the status of his grievance with the superintendent or appealed his grievance to CORC directly while still complying with the IGP.  Plaintiff's admission that his grievance was pending and being investigated demonstrates that administrative remedies were available at the time he commenced this action.

Thus, under the totality of the circumstances here, the undersigned finds that administrative remedies were available to plaintiff as: (1) plaintiff did not mention unavailability of the grievance process in his appeal to CORC; (2) plaintiff did not write to the superintendent to check on the status, nor appeal to CORC before filing his federal lawsuit; and (3) the superintendent's delay was fairly brief at the time plaintiff commenced his federal lawsuit.  Accordingly, as the undersigned concludes that plaintiff failed to exhaust his administrative remedies and that administrative remedies were available to him, it is recommended that defendants' motion be granted.[8]  See Berry, 366 F.3d at 87 (holding that dismissal without prejudice is appropriate where "a prisoner who brings suit

---

[8] As the undersigned concludes that plaintiff has failed to exhaust his administrative remedies prior to commencing suit and that administrative remedies were available to him, the undersigned declines to reach the merits of the plaintiff's claims.

without having exhausted these remedies can cure the defect by simply exhausting them and then reinstituting his suit.").


### III.    Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 32) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 27) be **DISMISSED** in its entirety **without prejudice**; and it is

**RECOMMENDED**, that plaintiff's filing in further support of his response in opposition to the motion for summary judgment, dkt. no. 43, be deemed **STRICKEN** from the record as it was filed without leave of the Court and far beyond the deadline for submissions; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 626(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.   Such objections shall be filed with the Clerk of the Court.   **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and

Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[9]

**IT IS SO ORDERED**.

Dated: December 17, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).